**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**VERNON KING,**

*Plaintiff,*

**v.**

**AUTO MAX CORPORATION,
and I & A AUTO SALES, INC.,**

*Defendants.*

---

**Case No. 2:23-cv-02350-JDW**

## <u>MEMORANDUM</u>

When Auto Max Corporation hired Vernon King to transport a pickup truck, it told Mr. King that the truck was operable. It wasn't. And Auto Max had reason to know it wasn't because, when it bought the truck, the seller told it that the truck had mechanical problems. When Mr. King tried to unload the truck from a car carrier, he operated under the assumption that the truck's transmission would hold it in place. That incorrect assumption led to the truck rolling over his legs. He says Auto Max should have told what it knew, and he's got a case. So, a jury will have to sort it out.

## I.   BACKGROUND

### A.   Facts

Auto Max is a company in the auto and auto parts sales business. Vernon King owns and operates a vehicle transportation service. On August 26, 2021, Auto Max bought a pickup truck from I&A Auto Sales, Inc. The transaction's receipt noted that the "vehicle

has mechanical problem." (ECF No. 48-4.) Auto Max then hired Mr. King using an online service ("Dealertrack Central Dispatch") to transport the truck from Georgia to Pennsylvania. Auto Max has used Dealertrack Central Dispatch to arrange the transport of hundreds of vehicles over the past twenty years.

Dealertrack Central Dispatch generated a "Dispatch Sheet" with information about the transportation job for Mr. King. On the Dispatch Sheet, the condition of the truck was classified as "operable" (as opposed to "inoperable"). (ECF No. 48-8.) The Dispatch Sheet also instructed Mr. King to inspect the vehicle upon pickup. Mr. King performed only a cosmetic inspection of the truck which, according to Mr. King's expert, is "customary" in the field. (ECF No. 49-5 at 2.) A third party loaded the truck onto Mr. King's car carrier, and Mr. King drove to the drop-off point without incident.

At the drop-off point, Mr. King tried to unload the truck from his car carrier by driving the truck off, but it wouldn't start even after he tried jumping it. He released the emergency brakes. Because the dispatch sheet listed the truck as "operable," Mr. King assumed that the transmission would hold the car in park. (ECF No. 48-2 at 33:18-35:3.) It didn't. The car shot back "like a rocket," and he was thrown from the truck, which rolled over his leg. (*Id.* at 34:16.) Mr. King sustained serious injuries as a result. It was "later determined that someone had removed [the truck's] drive shaft." (ECF No. 49-5 at 1.)

### B.    Procedural History

On February 17, 2023, Mr. King sued Defendants in the Northern District of Georgia. The Complaint asserted two counts of negligence alleging that Defendants were "negligent in providing misinformation on the Dispatch report that stated the truck [was] operable when in fact it was inoperable." (ECF No. 1 ¶ 12.) The case was transferred to this Court. On April 2, 2024, Auto Max filed a Motion for Summary Judgment. (ECF No. 47.) Mr. King responded, and the Motion is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–

87 (1986). When determining whether a genuine issue of material fact exists, a judge must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

### A.   Negligent Misrepresentation

#### 1.   Standard

The Restatement (Second) of Torts distinguishes between two types of negligent misrepresentation based on the type of injury. When the injury is pecuniary harm, Section 552 applies, but where it is physical harm, Section 311 governs. *See* Restatement (Second) of Torts § 552 cmt. a ("[T]he scope of [liability under § 552] is not determined by the rules that govern liability for ... negligent misrepresentation that results in physical harm."). Pennsylvania state law recognizes both types of negligent misrepresentation. *See, e.g., English v. Lehigh Cty. Auth.*, 428 A.2d 1343, 1356 (1981) (quoting Restatement (Second) of Torts § 311); *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285 (2005) (using § 552).

Despite the Parties' citations to the pecuniary harm standard, Mr. King's case squarely falls within the purview of Section 311. He claims that Auto Max's negligent misrepresentation put him at risk of physical, not financial, injury. *See* Restatement (Second) of Torts § 311 cmt. b. As a result, I will analyze the propriety of summary judgment using Section 311, which is a more natural fit for these facts. That's particularly

4

appropriate because Pennsylvania courts have cautioned against expanding the reach of Section 552. *See Azur v. Chase Bank, USA, Nat. Ass'n*, 601 F.3d 212, 223 (3d Cir. 2010) (quoting *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.*, 985 A.2d 840, 843 (2009)).

Section 311 provides that: "[o]ne who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results to the other …" Restatement (Second) of Torts § 311(1). "Such negligence may consist of failure to exercise reasonable care in ascertaining the accuracy of the information, or in the manner in which it is communicated." *Id.* § 311(2). This liability is "somewhat broader" than that of § 552. *Id.* § 311 cmt. a.

### 2.    Duty/breach

A reasonable juror could find that Auto Max owed a duty to Mr. King. A duty arises when one "in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize that the safety of the person of others may depend upon the accuracy of the information." *Id.* § 311 cmt. b. Auto Max provided information about the transport job through Dealertrack Central Dispatch. Auto Max, particularly as a repeat user of Dealertrack Central Dispatch, would have known that this information was going to Mr. King. Auto Max knew or should have foreseen that Mr. King would rely on that information. The nature of the job was

transporting heavy machinery, so a juror could also conclude that Auto Max should have known that incorrect information posed a risk to Mr. King's physical safety.

A juror could also find a breach of that duty. There's evidence to support Mr. King's contention that the vehicle was inoperable, but that the Dispatch Sheet listed the vehicle as "operable." Under those circumstances, Auto Max may have failed to exercise reasonable care "in ascertaining the accuracy of the information" it gave to Mr. King. *Id.* § 311(2). Auto Max contends that it couldn't have provided accurate information because it wasn't in possession of the truck before Mr. King got to it. It may be true that Auto Max didn't or couldn't understand the full extent of the car's problems. For example, it may not have known about the missing drive shaft. But, based on the I&A sales receipt, a reasonable juror could find that Auto Max was on notice that the truck was defective and failed to communicate the critical fact that it did have in its possession.

Auto Max argues that to survive summary judgment Mr. King must show that Auto Max "owed a duty to provide [Mr. King] specific information … regarding the [truck]." (ECF No. 47-2 at 17.) That's a strawman argument. It's not that Auto Max had a duty to speak. *See generally Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995) (describing the limitations of the duty to speak under Pennsylvania law). Rather, when Auto Max provided information to Mr. King, it owed him a duty to not be negligent in providing that information. *See* Restatement (Second) of Torts § 311.

Auto Max maintains that finding a duty under these circumstances would pose an undue hardship on companies hiring specialists. But the burden is far more modest than what Auto Max fears. There's no duty to "advise the specialist [like Mr. King] on exactly how to do every aspect of the job they are hired to do." (ECF No. 47-2 at 19.) Rather, Section 311 liability extends to situations where the company gives certain information to the specialist and knows that the specialist may rely on this information in a way that impacts his physical safety.

Section 311 liability differs from Section 552 because it doesn't require that the misrepresentation was of a "material" fact, that defendant should have known the falsity of the misrepresentation, or that the defendant intended to induce the plaintiff's reliance. *See* Restatement (Second) of Torts § 552. As a result, Auto Max's arguments that Mr. King can't meet these standards is irrelevant.

### 3.    Reliance

The question of whether reliance on a misrepresentation is reasonable is usually a question for the jury, and this case is no exception. *See Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 135 (3d Cir. 2005) (quoting *Silverman v. Bell Sav. & Loan Ass'n*, 533 A.2d 110, 115 (1987) (analyzing a § 552 claim)). The reasonableness of a plaintiff's reliance is a fact-specific inquiry based on the totality of the circumstances, including the parties, their relationship, and the circumstances surrounding the misrepresentation. *See Butakis v. NVR, Inc.*, 668 F. Supp. 3d 349, 356 (E.D. Pa. 2023).

Auto Max argues that because Mr. King was unable to start the truck after attempting to jump the car, his reliance on the misrepresentation was unreasonable. But, looking at the facts in the light most favorable to Mr. King, I can't agree. It's possible for something to be operable (in the sense that it is *capable* of operating in a normal manner) and, in a given moment, non-functional. That the truck wouldn't start might have clued Mr. King into the fact that the truck was having mechanical difficulties, but not that it was missing a drive shaft. Knowing about a dead battery isn't the same as knowing the transmission would fail to hold the car. Auto Max also faults Mr. King's cursory inspection of the truck, but it's unclear whether Mr. King needed to have done more based on industry standards or whether a more thorough examination would have caught the defects. As a result, a jury will determine if Mr. King's reliance on the misrepresentation was reasonable.[1]

**B.    Negligence**

Mr. King's Complaint asserts two counts of negligence, one against each defendant. Both are premised on the Defendants' negligence in providing "misinformation" to Mr. King. (ECF No. 1 ¶¶ 12, 19.) The purpose of the pleading

---

[1] Contrary to Auto Max's argument, the "independent contractor" rule has no application here. That rule insulates an employer who engages an independent contractor from liability for physical harm caused by *the contractor's* negligence. *Beil v. Telesis Const., Inc.*, 11 A.3d 456, 466 (2011). Mr. King is not trying to hold Auto Max liable for *his* negligence under a vicarious liability theory. Mr. King's claim of negligent misrepresentation is premised on *Auto Max's* negligence.

requirements is to give a defendant notice of the claims against him. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). Auto Max recognizes that what's pled is a more specific species of negligence: it's negligent misrepresentation. That's evident from Auto Max's summary judgment briefing and representations at the hearing on Mr. King's motion to amend his complaint. When all parties agree that a claim is in the case, the Rules indicate that the claim should be decided on its merits. *Cf.* Fed. R. Civ. P. 15(b)(2). Under these circumstances, it's proper for me to construe Mr. King's complaint as asserting two claims of negligent misrepresentation. *See, e.g., Isakson v. WSI Corp.*, 771 F. Supp. 2d 1257, 1263 (W.D. Wash. 2011) (recategorizing a negligence claim).

After I consider these claims for what they really are, there's no separate theory of harm to prop up a general negligence claim. Mr. King hasn't offered another duty, breach, or injury for me to consider. Thus, I will view Mr. King's complaint as bringing two counts of negligent misrepresentation and, for the reasons given above, allow a jury to hear those claims. But because Mr. King hasn't pointed to anything on the record to support another theory of negligence, that's all the jury will hear.

## IV.    CONCLUSION

A reasonable jury could find that Auto Max breached its duty to Mr. King when it misrepresented the operability of the truck. As a result, summary judgment is inappropriate, and this case will proceed to trial. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

May 15, 2024